# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOUNDATION FENCE, INC., a California corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>KIEWIT PACIFIC COMPANY, a Delaware corporation; et al.,<br><br>    Defendants. | CASE NO. 09cv2062 DMS (JMA)<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[Docket No. 26] |

This case came on for hearing on October 1, 2010, on Defendants' motion for summary judgment. Louis J. Blum appeared on behalf of Plaintiff and Jack Leer appeared and argued on behalf of Defendants. After reviewing the parties' briefs and hearing oral argument from counsel, the Court denies the motion.

## I.
## BACKGROUND

On July 8, 2008, Defendant Kiewit Pacific Company ("Kiewit") entered into a "Prime Contract" with the United States Army Corps of Engineers ("ACE") for the construction of three segments of a fence along the United States-Mexico Border between Tecate and Jacumba.

///
///

1       On July 24, 2008, Kiewit entered into a Subcontract with Plaintiff Foundation Fence, Inc. for the fabrication and installation of approximately 6.25 miles of the border fence for the price of $12,887,814.48. (Notice of Lodgment, Ex. E.)

During the course of construction, two disputes arose between and among Foundation Fence, Kiewit and ACE. The first dispute concerned a change to the project requested by ACE. Specifically, on August 26, 2008, ACE informed Kiewit that Kiewit and Foundation Fence were to suspend work on or around an access road and lay down area near another section of the project. (Notice of Lodgment, Ex. F at 91.) Kiewit forwarded this information to Foundation Fence on August 27, 2008. (*Id.* at 90.)

On October 29, 2008, Foundation Fence submitted a claim to Kiewit for $346,461.37 in additional costs arising out of the delayed access to the site ("the Delayed Access Claim"). (Notice of Lodgment, Ex. G.) Kiewit requested that Foundation Fence revise its claim so that Kiewit could present it to ACE. (Notice of Lodgment, Ex. H.) Foundation Fence revised its claim and resubmitted it to Kiewit on January 7, 2009. (Notice of Lodgment, Ex. I.) Kiewit again requested that Foundation Fence revise its claim. (Notice of Lodgment, Ex. K.) Foundation Fence did so, and resubmitted its claim to Kiewit on February 24, 2009. (Notice of Lodgment, Ex. J.) On March 16, 2009, Kiewit submitted the claim to ACE. (Notice of Lodgment, Ex. L.) ACE denied the claim on April 7, 2009, and Kiewit informed Foundation Fence of the denial on April 13, 2009. (Notice of Lodgment, Ex. M.)

The parties disagree on the basis for the second dispute. Kiewit asserts it arose out of ACE's rejection of Foundation Fence's proposal to modify the foundation requirements and dig barrier for the fence, while Foundation Fence contends the dispute was the result of wide trenches caused by natural conditions and Kiewit's conduct.

On January 13, 2009, Foundation Fence submitted a claim to Kiewit for $1,432,131.84 in additional costs arising out of the trench/foundation dispute ("the Trench/Foundation Claim"). (Notice of Lodgment, Ex. Q.) In that claim, Foundation Fence stated, "The USACE did not want to use our design and chose to have us dig the 6' depth regardless of the width of the trench. This cost us much more time and additional concrete." (*Id.* at 146.) Kiewit responded to the claim in a letter dated January 22, 2009. (Notice of Lodgment, Ex. R.) In that letter, Kiewit took issue with Foundation Fence's characterization of the dispute as a "design change," and stated its position was that "the USACE acted

appropriately and in accordance with the RFP and contract documents." (*Id.* at 150.) Kiewit requested that Foundation Fence revise its claim so that Kiewit could present it to ACE. (*Id.* at 149-51.) Foundation Fence revised its claim and resubmitted it to Kiewit on March 13, 2009. (Notice of Lodgment, Ex. U.) That claim states: "This letter is submitted by Foundation Fence, Inc. ("FFI") as a request for Change Order ("RFCO") and equitable adjustment in accord with Section 5(b), CHANGES, of that certain Subcontract between FFI and Kiewit Pacific Co. ("Kiewit") dated July 20, 2008 ("Subcontract"), attached hereto as Exhibit 'A.'" (*Id.* at 155.) Kiewit responded to the claim in a letter dated March 26, 2009. (Notice of Lodgment, Ex. V.) In that letter, Kiewit requested that Foundation Fence make further revisions to its claim. Foundation Fence declined to do so, and instead filed the present case against Kiewit and its payment bond surety, Travelers Casualty and Surety Company of America. The Complaint alleges five claims: three claims under the Miller Act, one claim for breach of the Subcontract, and one claim for reasonable value.

## II.

## DISCUSSION

Defendants move for summary judgment on all of Plaintiff's claims. They argue Sections 5(b) and 19(a) of the Subcontract set forth conditions precedent to Plaintiff's right to bring the present claims, and since Plaintiff has failed to comply with those conditions, its claims are barred. (Mem. of P. & A. in Supp. of Mot. at 11.) Plaintiff disputes that Sections 5(b) and 19(a) apply to its claims, but argues that even if they do, they are not conditions precedent to its claims. Rather, Plaintiff asserts these Sections operate as an implied waiver of Plaintiff's claims, which is invalid.

**A.    Standard of Review**

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome of the

///

litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the opposing party to show that summary judgment is not appropriate. *Celotex*, 477 U.S. at 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific facts showing there is a genuine issue for trial. *Id.* More than a "metaphysical doubt" is required to establish a genuine issue of material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**B. Sections 5(b) and 19(a) of the Subcontract[1]**

Section 5(b) of the Subcontract is entitled "Changes," and provides:

> For changes in the Prime Contract that have been initiated by Owner [ACE], for acts or omissions of the Owner and for defects in the Prime Contact, Subcontractor shall submit any claims it may have, including notice thereof, for adjustment in the price, schedule or other provisions of the Subcontract to Contractor [Kiewit] in writing in sufficient time and form to allow Contractor to process such claims within the time and in the manner provided for and in accordance with the applicable provisions of the Prime Contract. Subcontractor agrees that it will accept such adjustment, if any, received by Contractor from Owner as full satisfaction and discharge of such claim.

(Notice of Lodgment, Ex. E at 76.) Section 19(a) governs "Disputes," and provides:

> In the event of any request or claim by Subcontractor seeking additional time or compensation which arises out of or is related to the acts or omissions of the Owner, changes to or defects in the Prime Contract, or any other claim for which the Owner may have responsibility, Subcontractor agrees to be bound to Contractor to the same extent that Contractor is bound to Owner, both by the terms of the Prime Contract and by any and all decisions or determinations made thereunder by the party, board or court as authorized in the Prime Contract for resolving such claims. In the event the Prime Contract contains a provision, hereinafter called a "Disputes" clause, specifying a procedure for resolving claims, then Contractor agrees to invoke, at Subcontractor's request, such Disputes clause on behalf of Subcontractor, and to allow Subcontractor to present such claims to Owner in Contractor's name, provided Subcontractor cooperates fully with Contractor in the presentation of such claims. Subcontractor shall have full responsibility for the preparation and presentation of its claims, including timely notice to allow Contractor to comply with the terms of the Prime Contract, and shall bear all expense related thereto, including attorneys' fees. Subcontractor agrees to be bound by any final determination as rendered on its claim, whether pursuant to any such Disputes clause or otherwise, and Subcontractor shall in no event be entitled to receive any greater amount from Contractor than Contractor is entitled to and actually does receive from

---

[1] The Court notes there is a dispute about whether these Sections apply to Plaintiff's claim. In light of the discussion below, the Court declines to resolve that dispute here.

> Owner on account of Subcontractor's claims, less any markups or costs incurred by Contractor and to which Contractor is otherwise entitled, and Subcontractor agrees that it will accept such amount, if any, received by Contractor from Owner as full satisfaction and discharge of such claims. Subcontractor agrees that it will not take any other action with respect to any such claim. In the event Subcontractor is not diligent in the pursuit of its claims, or otherwise refuses to cooperate with Contractor as provided herein, then in its sole discretion Contractor may consider such claims to be waived by Subcontractor, or may prepare and present such claims on behalf of Subcontractor.

(*Id.* at 78-79.) Defendants argue these Sections of the Subcontract operate as conditions precedent to Plaintiff's right to bring the present claims, and since Plaintiff has not complied with these conditions, its claims are barred. (Mem. of P. & A. in Supp. of Mot. at 11.) However, "provisions of a contract will not be construed as conditions precedent in the absence of language plainly requiring such construction." *Rubin v. Fuchs*, 1 Cal. 3d 50, 53 (1969) (citations omitted). There is no such language in the Subcontract at issue here, therefore the Court rejects Defendants' argument that Sections 5(b) and 19(a) are conditions precedent to Plaintiff's right to bring the present claims.

Rather, the Court agrees with Plaintiff that these Sections operate as an implied waiver of Plaintiff's claims. The Ninth Circuit addressed an implied waiver of a subcontractor's rights under the Miller Act in *United States v. Weststar Engineering, Inc.*, 290 F.3d 1199 (9th Cir. 2002). *Weststar* involved a federal construction project, and arose out of a subcontractor's Miller Act claims against the general contractor and its payment bond surety. Before the lawsuit was filed, the subcontractor and the general contractor entered into a settlement agreement, which included a clause providing that the general contractor would make future payments to the subcontractor only when and if it received payment from the Navy. *Id.* at 1203. After the lawsuit was filed, the defendants moved for summary judgment, arguing they were not liable to the subcontractor because the "pay when and if paid" clause in the settlement agreement had not been satisfied. *Id.* at 1204. The district court granted summary judgment, but the Ninth Circuit reversed, holding "that to permit a Miller Act surety and its principal to avoid liability on this basis would prevent a subcontractor from exercising its Miller Act rights in the absence of a 'clear and explicit' waiver of those rights." *Id.* at 1204-05. In reaching that conclusion, the court drew a distinction between "a case in which the *measure of recovery* in a Miller Act case is determined by reference to subcontract terms governing how work performed under the subcontract will be compensated and one in which the timing of recovery, and, in some cases, the right of recovery under

1 the Miller Act is dictated by such terms." *Id.* at 1207. Although the court was willing to enforce a
2 subcontract's terms in the former case, it was unwilling to do so in the latter case because "enforcement
3 of such terms to preclude Miller Act liability contradict the express terms of the Miller Act." *Id.* As
4 the court stated, "It would, in effect, transform Walton's agreement concerning Weststar's contractual
5 obligations into an implied waiver of Walton's rights under the Miller Act." *Id.* at 1208.

6 The court then turned to consider whether the clause at issue constituted a valid waiver of the
7 subcontractor's Miller Act rights. *Id.* It started its analysis by reciting the general rule that a waiver of
8 Miller Act rights must be "'clear and explicit.'" *Id.* (quoting *Youngstown Welding & Engineering v.
9 Travelers Indemnity Co.*, 802 F.2d 1164 (9th Cir. 1986)). The court then concluded that the clause at
10 issue did not meet that standard because "it does not identify any rights that Walton may have under the
11 Miller Act payment bond-or any bond for that matter-as a predicate for releasing them. Indeed, it is not
12 even framed as a release or waiver of claims." *Id.* at 1209.

13 Defendants argue this case is distinguishable from *Weststar* in that the clause at issue there was
14 concerned with the timing of payments whereas Sections 5(b) and 19(a) concern the entitlement to
15 payments. However, that distinction does not make a difference in the Court's analysis. In *Weststar*,
16 the court treated both types of clauses, those concerning timing and those concerning entitlement, the
17 same way: As "an implied waiver of [the subcontractor's] rights under the Miller Act." *Id.* at 1208.

18 Defendants also assert Sections 5(b) and 19(a) concern the measure or amount of Plaintiff's
19 potential recovery, thereby removing this case from the purview of *Weststar*. However, the Court
20 disagrees with that interpretation of the Subcontract. Although both Section 5(b) and Section 19(a) limit
21 the amount of Plaintiff's potential recovery,[2] they also state that any adjustments or amounts received
22 will constitute "full satisfaction and discharge of such claims." (*Id.* at 76, 79.) Indeed, Section 19(a)
23 states, "Subcontractor agrees that it will not take any other action with respect to any such claims." (*Id.*
24 at 79.) This language directly conflicts with Defendants' assertion in their brief, (*see* Reply Mem. at
25 7),

---

[2] Section 5(b) limits Plaintiff's recovery to that "adjustment, if any, received by Contractor from Owner," (Notice of Lodgment, Ex. E at 76), and Section 19(a) provides Plaintiff shall not "be entitled to receive any greater amount from Contractor than Contractor is entitled to and actually does receive from Owner on account of Subcontractor's claims, less any markups or costs incurred by Contractor and to which Contractor is otherwise entitled[.]" (*Id.* at 78.)

1 ///

2 and at oral argument that Plaintiff would have a right to bring the present claims after exhausting these
3 dispute provisions.

4 Nevertheless, Defendants argue dispute provisions like the ones at issue here "have routinely
5 been upheld by Federal courts." (*Id.*) In support of this argument, Defendants cite *United States v.*
6 *Norquay Construction, Inc.*, No. CIV 06-1598 PHX RCB, 2007 WL 1839279 (D. Ariz. June 26, 2007),
7 *United States v. Daniel, Urbahn, Seelye and Fuller*, 357 F.Supp. 853 (N.D. Ill. 1973), *United States v.*
8 *David Boland, Inc.*, 922 F.Supp. 597 (S.D. Fla. 1996), and *United States v. Dick/Morganti*, No. C 07-
9 02564 CRB, 2007 WL 3231717 (N.D. Cal. 2007). Each of these cases, however, is distinguishable.

10 In *Norquay*, the court granted summary judgment for the contractor on the basis of contract
11 provisions concerning "the measure, not the timing, of payments due." 2007 WL 1839279, at *7. In
12 this case, by contrast, the contract provisions concern Plaintiff's entitlement to payment, not just the
13 measure of its recovery.

14 Also unlike this case, the court in *Daniel* found the disputes clause at issue there did not amount
15 to a waiver of the subcontractor's Miller Act rights. 357 F.Supp. at 861. Unlike Section 5(b) and 19(a),
16 which preclude Plaintiff from taking further action on its claims, the disputes clause at issue in *Daniel*
17 specifically provided for judicial review of decisions that were "fraudulent, or capricious, or arbitrary,
18 or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence ...."
19 *Id.*

20 The *David Boland* court, like this Court, found that the disputes clause at issue there amounted
21 to a waiver of the subcontractor's Miller Act rights. 922 F.Supp. at 598. However, unlike the
22 subcontract at issue here, the subcontract at issue in *David Boland* "contain[ed] an express waiver of
23 the subcontractor's Miller Act remedy." *Id.* (citation omitted).

24 Finally, the *Dick/Morganti* court, like the *Daniel* court, found the dispute clause at issue did not
25 amount to a waiver of the subcontractor's Miller Act rights. 2007 WL 3231717, at *3. Unlike Sections
26 5(b) and 19(a), "the subcontracts merely stay[ed the Miller Act] claim pending completion of the
27 administrative resolution process." *Id.*

28

Contrary to Defendants' suggestion, this Court finds Sections 5(b) and 19(a) of the Subcontract amount to an implied waiver of Plaintiff's rights to bring the present claims. According to *Weststar*, and 40 U.S.C. § 3133(c),[3] such waivers must be clear and explicit. Defendants have not made that showing here, and thus the Court declines to find waiver. Accordingly, Defendants are not entitled to summary judgment.

## III.

## CONCLUSION

For these reasons, the Court denies Defendants' motion for summary judgment.

**IT IS SO ORDERED**.

DATED: October 13, 2010

HON. DANA M. SABRAW
United States District Judge

---

[3] This statute provides: "A waiver of the right to bring a civil action on a payment bond required under this subchapter is void unless the waiver is- - (1) in writing; (2) signed by the person whose right is waiver; and (3) executed after the person whose right is waived has furnished labor or material for use in the performance of the contract." 40 U.S.C. § 3133(c).